LALVCRUA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        21 CR 636 (JPC)

5   RICARDO CRUCIANI,

6              Defendant.                Arraignment

7   ------------------------------x

8                                        New York, N.Y.
                                         October 21, 2021
9                                        9:45 a.m.

10
    Before:
11
                    HON. JOHN P. CRONAN,
12
                                         District Judge
13

14                       APPEARANCES

15
    DAMIAN WILLIAMS,
16       United States Attorney for the
         Southern District of New York
17  JANE KIM
         Assistant United States Attorney
18
    FREDERICK L. SOSINSKY
19  ELIZABETH MACEDONIO
         Attorneys for Defendant
20

21

22

23

24

25

LALVCRUA

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, starting with the

3   government, please state your name for the record.

4          MS. KIM:  Good morning, your Honor.

5          Jane Kim for the government.

6          THE COURT:  Good morning, Ms. Kim.

7          MS. MACEDONIO:  Good morning, your Honor.

8          Elizabeth Macedonio and Fred Sosinsky for

9   Mr. Cruciani.

10          MR. SOSINSKY:  Good morning, your Honor.

11          THE COURT:  Good morning, Ms. Macedonio and

12   Mr. Sosinsky.  And good morning, Mr. Cruciani.

13          We are here for the defendant Ricardo Cruciani's

14   arraignment and his initial pretrial conference.

15          Ms. Kim, I understand that the defendant was presented

16   yesterday before Judge Lehrburger; is that right?

17          MS. KIM:  Yes, your Honor.

18          THE COURT:  And also just as a quick initial matter, I

19   know it's a brand-new case, but just a reminder, Ms. Macedonio

20   and Mr. Furman, too, if he's appearing, I believe he called

21   chambers to file a notice of appearance, when you have a

22   chance.

23          MS. MACEDONIO:  Will do.  Thank you, Judge.

24          THE COURT:  Before we turn to the defendant's

25   arraignment, as I typically do in criminal cases, I want to put

LALVCRUA

1   on the record my prior work before taking the bench.

2          Before I was confirmed to the district court, I worked

3   at the United States Department of Justice.  I was a prosecutor

4   in the U.S. Attorney's Office for the Southern District of New

5   York, which, of course, is Ms. Kim's and Ms. Kelly's, the other

6   prosecutor in this case, their office.  I worked there in the

7   criminal division of the U.S. Attorney's Office from around

8   March 2007 to August 2017.  After that point, I worked at the

9   Department of Justice's criminal division until around August

10  2020, when I was confirmed for my current position.

11         The indictment was filed, of course, after I left the

12  Department of Justice, but it alleges conduct that went back

13  for decades and, therefore, alleges at least for 15 years or so

14  and, therefore, alleges allegations of conduct that took place

15  while I was at the Department of Justice.

16         I reviewed the indictment.  I'll ask Ms. Kim as well,

17  but I'm aware of no involvement that I had in this

18  investigation in any capacity while I was at the Department of

19  Justice, including consulting on the investigation, supervising

20  any part of the investigation, approving any investigative

21  techniques, or any role whatsoever.

22         But, Ms. Kim, let me ask you that question as well.

23  Is that your understanding, too?  Are you aware of any

24  involvement that I had in this investigation?

25         MS. KIM:  Your Honor, that's my understanding.  I'm

LALVCRUA

```
1    not aware of any involvement that you had in this

2    investigation.

3            THE COURT:  And let me just ask a couple of more

4    specific questions.

5            Were there any Title III wiretaps in this case?

6            MS. KIM:  No, your Honor.

7            THE COURT:  And what about any investigative

8    techniques that might have required approval or consultation

9    with the Office of Enforcement Operations?

10           MS. KIM:  No, your Honor.

11           THE COURT:  Thank you.

12           Let me also put on the record that I overlapped at the

13   U.S. Attorney's Office with Ms. Kim and Ms. Kelly.  I don't

14   recall working any cases with Ms. Kelly.  I did work with

15   Ms. Kim for a bit.  I supervised her in her former unit I think

16   for about a year before I left to work in the Department of

17   Justice.

18           Ms. Macedonio, I believe -- I'm not sure if we had

19   matters together; I certainly recall you and your fine

20   reputation for being an excellent advocate and defense counsel.

21   I don't think I had any matters with Mr. Sosinsky or

22   Mr. Furman.  But, anyway, long way of saying that -- putting on

23   the record my background, I do not see any reason right now why

24   I cannot preside over this case.  But if any party thinks

25   otherwise, you're certainly welcome to make a motion that I
```

LALVCRUA

1      would consider.  I would just ask that any motion be made, to

2      the extent possible, within two weeks so we can be sure to keep

3      this case moving at an appropriate speed.

4              So Ms. Kim, let me ask you a little bit more about the

5      defendant's arrest.  When and where was he arrested?

6              MS. KIM:  Your Honor, the defendant was arrested

7      yesterday morning at approximately 7:30 a.m. in Pocono Pines,

8      Pennsylvania.

9              THE COURT:  And obviously the defendant was detained

10     yesterday.  Was there a bail argument before Judge Lehrburger?

11             MS. KIM:  There wasn't, your Honor.  The parties

12     agreed to certain bail conditions, and the defendant will be

13     detained until he can meet certain of those bail conditions.

14             THE COURT:  And can you tell me about those bail

15     conditions?

16             MS. KIM:  Certainly, your Honor.

17             The defendant will be released on a $2 million bond

18     secured by three properties:  one in New Jersey, one in

19     Pennsylvania and one in the Poconos.  The $2 million bond will

20     also be secured by three financially responsible cosigners.

21     The defendant will be placed on home incarceration enforced by

22     location monitoring.  He will be under pretrial supervision.

23     He will not have contact with potential witnesses or victims.

24             He will surrender his travel documents and make no new

25     applications.  His travel will be restricted to the Southern

LALVCRUA

1    District of New York for court or meetings with lawyers, to the

2    Eastern District of New York for meetings with lawyers, to the

3    District of New Jersey for court or meetings with lawyers, and

4    to the Eastern District of Pennsylvania where he will reside.

5            He will not use any controlled substances, and he will

6    obtain a mental health evaluation and treatment if determined

7    that those are necessary by pretrial services.

8            He shall be detained until all of these conditions are

9    met, with the exception of securing the three properties.  And

10   he shall secure those three properties by or before next

11   Friday, October 29th.

12           THE COURT:  Thank you.

13           And were those conditions accurate from the

14   defendant's perspective?

15           MR. SOSINSKY:  Yes, your Honor.

16           THE COURT:  If there comes a point where there's a

17   request to modify any of those conditions, that request should

18   come to me.

19           Let's turn now to the defendant's arraignment.

20           Mr. Sosinsky, have you received a copy of the

21   indictment charging your client?

22           MR. SOSINSKY:  We have, sir.

23           THE COURT:  And have you had a chance to review it

24   with your client?

25           MR. SOSINSKY:  Yesterday my colleague Mr. Furman went

LALVCRUA

1    over the indictment word-by-word with Mr. Cruciani.

2              THE COURT:  Thank you for that.

3              And Mr. Cruciani, is that right?  Have you had the

4    chance to review the indictment?

5              THE DEFENDANT:  Yes, that is correct.

6              THE COURT:  So you are charged in indictment number 21

7    CR 636 in five counts.  Each of those counts charges that you

8    knowingly persuaded, induced, enticed, and coerced an

9    individual to travel in interstate and foreign commerce to

10   engage in sexual activity for which a person can be charged for

11   a criminal offense.  That would be in violation of Title 18,

12   United States Code, Sections 2422(a) and 2.

13             Each count alleges a different victim.

14             Count One alleges conduct from approximately 2002 to

15   2003; Count Two alleges conduct from approximately 2003 to

16   2004; Count Three and, I believe, also Count Four alleges

17   conduct from 2006 to 2014; and lastly, Count Five alleges

18   conduct from 2008 to approximately 2017.

19             And the indictment contains a forfeiture allegation as

20   well.

21             Mr. Cruciani, do you waive the indictment's public

22   reading?  In other words, do you wish for me to read the entire

23   indictment to you?

24             THE DEFENDANT:  Yes, we wish.

25             MR. SOSINSKY:  That was yes, we would waive.

LALVCRUA

1                THE COURT:  Yes, we would waive.  Thank you.

2                And Mr. Sosinsky, do you wish to enter a plea on

3      behalf of your client?

4                MR. SOSINSKY:  We do.  And that plea will be not

5      guilty to the indictment, sir.

6                THE COURT:  To all five counts, I assume?

7                MR. SOSINSKY:  Yes, sir.

8                THE COURT:  The Court will enter a not guilty plea for

9      the defendant.

10               Let me go back to Ms. Kim.

11               Ms. Kim, can you give me an overview of this case, the

12     alleged conduct that gave rise to the charges, and also a

13     summary of the category and volumes of materials that the

14     government expects to produce in discovery pursuant to Rule 16.

15               MS. KIM:  Yes, your Honor.

16               As the Court has explained, the defendant is charged

17     in five counts with enticement.  The defendant was a pain

18     management doctor for nearly two decades.  He was employed by

19     at least three prominent medical institutions:  One in New

20     York, one in New Jersey, and one in Pennsylvania.

21               In his capacity as a pain management doctor, he

22     treated patients who suffered from severe and chronic pain and

23     were extremely vulnerable.  He managed their pain medication,

24     including prescriptions for highly addictive medication like

25     opioids.

LALVCRUA

1          The defendant sexually abused numerous of these

2     patients over the course of at least 15 years and across

3     multiple states.  And he enticed some of these victims to

4     travel across state lines so that he could sexually abuse them.

5     Five of those victims are statutory victims, as referenced in

6     the indictment.

7          In terms of the discovery and the government's

8     evidence in this case, the discovery consists of subpoena

9     returns; medical records pertaining to the victims referenced

10    in the indictment, as well as other victims and other patients;

11    other documents obtained from the defendant's former employers.

12         Two search warrants have been executed in the case,

13    one was a GPS ping for the defendant's location and one is a

14    search warrant for the defendant's email.

15         We have not yet received the returns for the

16    defendant's email, but we have communicated with defense

17    counsel about how we will approach a potential privilege review

18    of those materials.

19         The evidence also includes law enforcement reports.

20         We have been in communication with the defense about a

21    potential protective order, and we are hoping to submit a

22    proposed stipulated protective order to the Court this week, if

23    not today.  And then to begin producing discovery to the

24    defendant in short order after we receive a hard drive.

25         THE COURT:  And in terms of how long production of

LALVCRUA

1    discovery will take, what is the government's estimate?

2          MS. KIM:  Apart from the email search warrant returns

3    which we have not yet obtained, we believe we'll be able to

4    produce these materials, technology permitting, within a few

5    weeks.

6          THE COURT:  And Mr. Sosinsky, does that schedule work

7    for the defendant?

8          MR. SOSINSKY:  The schedule as such works for us.

9          But having had some experience in some of the other

10   litigation involved in this case, I can tell you that many of

11   the medical records pertaining to identified complainants or

12   victims can be extremely voluminous, especially the ones who

13   may have treated with Mr. Cruciani, and some of his colleagues

14   for decades as the Court outlined.  So we're looking forward to

15   receiving it and we will do everything to allow that to move

16   along quickly.

17         But it will be our suggestion, sir, if we could, that

18   we come back before the Court in about 60 days and identify for

19   you how we're doing in terms of both receiving and beginning to

20   review that discovery.  And if there are any issues that are

21   arising that are preventing an efficient review of those --

22         THE COURT:  I think that that would make sense.

23         Ms. Kim, it sounds like the volume will be -- the

24   amount will be somewhat voluminous?

25         MS. KIM:  Yes, your Honor.

LALVCRUA

1          THE COURT:  And Mr. Sosinsky, you touched on a

2    question I was going to ask.  And I don't know if it's better

3    for you or for Ms. Kim or Ms. Macedonio, for that matter.

4          What is the status of any other cases?

5          MR. SOSINSKY:  Sure, your Honor.

6          If I could, I'll begin.

7          THE COURT:  Sounds good.

8          MR. SOSINSKY:  I'm involved in one of them.  I'm not

9    sure that Ms. Kim is.

10          There is a criminal prosecution going on in state

11    supreme court in New York County here in Manhattan.  That case

12    has been pending for quite some time.  We have had a couple of

13    tentative trial dates that got moved because, among other

14    reasons, the courthouse in New York County -- and I think it's

15    the case throughout the city -- the courthouse is still not

16    prepared to engage in a projected lengthy trial.  The parties

17    there estimate, between jury selection, questionnaires, and

18    whatnot, and the number of anticipated witnesses, that trial

19    could be three, four weeks going, and they are just not doing

20    that yet.  So the expectation is in the spring that trials of

21    that nature may go forward, and that is our hope with regard to

22    that.

23          There is a separate criminal proceeding in New Jersey

24    that we're not directly involved with that I think suffers from

25    some of the same scheduling issues in terms of length of trial

LALVCRUA

1    and, with COVID, being prepared to move forward with that.

2    Again, we're not --

3            THE COURT:  Is that New Jersey state court?

4            MR. SOSINSKY:  Yes.  I'm sorry, if I wasn't clear,

5    yes.

6            And my understanding is that through communication

7    with counsel, that that case, the court has agreed, would trail

8    the New York County trial, which were not for the pandemic I

9    think would have clearly taken place by now.

10           Those are two pending criminal prosecutions.

11           There are also, as the Court may or may not be aware,

12   lawsuits in at least three states that have been brought

13   against our client, as well as the medical -- the hospitals,

14   the medical centers at which he worked.  We're not yet aware of

15   who the complainants are in this case, but I can tell you that

16   with regard to the criminal prosecution in the other states,

17   nearly all of the complainants in those cases have initiated

18   lawsuits seeking millions of dollars from the hospitals and Dr.

19   Cruciani.

20           I'm not aware of who the complainants are here, so I

21   can't tell you about whether there are companion lawsuits.  We

22   anticipate probably learning that there are, but those lawsuits

23   have been also going on for a number of years, sir.  So that's

24   what I know about that litigation.

25           THE COURT:  That is very helpful.  Thank you.

LALVCRUA

1              Ms. Kim, anything you wish to add with any of that?

2              MS. KIM:   No.   That's consistent with our

3    understanding.

4              I would just add that there is also a case in

5    Pennsylvania, a state case, and that was brought in or about

6    2017.   The defendant pled to seven misdemeanors there and was

7    sentenced to probation and he's currently on probation there.

8              THE COURT:   Thank you.

9              Taking one step back to discovery and -- I'm sorry,

10   Mr. Sosinsky, anything?

11             MR. SOSINSKY:   Judge, I was addressing what I thought

12   was open matters.   Forgive me, I certainly --

13             THE COURT:   Oh, is there more?

14             MR. SOSINSKY:   No.   I was well aware of the

15   Pennsylvania matter; that's one of the states where there are

16   civil lawsuits.

17             But just with regard to the discovery that the

18   government outlined and Ms. Kim made mention, with regard to

19   the return on search warrants for emails, obviously as a result

20   of a number of investigations going on in various

21   jurisdictions, Mr. Cruciani has retained counsel to handle both

22   administrative, civil, criminal matters.   We've discussed this

23   preliminarily with the government, but we're obviously very

24   concerned that electronic mail, electronic communications

25   between our client and any of a number of different law firms

LALVCRUA

1    and attorneys in various jurisdictions not be reviewed by their

2    office.  And we've talked preliminarily about how to manage

3    that so as to avoid the avoidable.  But that is a real issue

4    here, and hopefully not the subject of litigation.

5         THE COURT:  That makes sense.  Hopefully everyone will

6    be able to work out the privilege review.  But if you need

7    intervention from me, obviously you know how to reach me.

8         MR. SOSINSKY:  And the other thing is -- and I'm just

9    raising this now in the hopes that we don't have to write on

10   it, Judge, but my understanding is that the proposed protective

11   order that the government will shortly be sending to us for our

12   review would prevent Mr. Cruciani from reviewing some, if not

13   the majority, of the records on his own.

14        Your Honor knows that pursuant to the bond that was

15   set, when he's released, he's going to be, in essence, at his

16   home.  And it is our hope, first, that we can agree; but if

17   not, that the Court will understand under those

18   circumstances -- and he doesn't live here in town -- that it

19   makes sense, given the allegations in this case, to allow him

20   here in 2021 to review medical records, patient records of

21   people who he treated, who his colleagues treated, who were

22   patients of the hospital, on his own that can help us, and then

23   we can meet and confer with him to better understand what the

24   records show and whatnot.

25        And that if anything, whatever else can be said,

LALVCRUA

Judge, the fact that there's been four years of litigation in
the jurisdictions that I've told you about, where this was not
an issue and no one has complained about harassment or
obstruction or anything like that that should give the Court, I
think, some relief that there's really no good argument in this
case why he shouldn't be able to assist us by going through
this stuff on his own.

We're here in New York City.  Your Honor is aware of
where he resides.  I don't think there's going to be any good
reason why he shouldn't be able to review these things.  And if
there's a particular class of records that poses particular
concerns, we can address it.

THE COURT:  Understood.

This may not be ripe yet, since you are still
discussing the protective order, but I certainly appreciate
what you're saying, especially given that he is in a different
state and we do want this case to move forward at an
appropriate pace.

But, Ms. Kim, do you agree, I will let you and counsel
try to see if you can work out an agreeable protective order?

MS. KIM:  Yes, your Honor.  Thank you.

THE COURT:  So on the topic of disclosure obligations
and discovery, one other matter to put on the record.

As the parties, I'm sure, know, last October, about a
year ago, the former president signed into law the Due Process

LALVCRUA

1   Protections Act.  That statute has provisions that amend Rule 5

2   of the Federal Rules of Criminal Procedure, such that Rule 5(f)

3   now requires me to remind the parties of the prosecutor's

4   obligation under the Supreme Court decision in *Brady v.*

5   *Maryland*.

6           Pursuant to that statute and pursuant to Rule 5(f), I

7   direct the prosecution to comply with its obligations under

8   *Brady v. Maryland* and that case's progeny to disclose to the

9   defense all information, whether admissible or not, that is

10  favorable to the defendant, material to either guilt or to

11  punishment, and known to the prosecution.  Possible

12  consequences for noncompliance may include dismissal of

13  individual charges or the entire case, exclusion of evidence,

14  and professional discipline or court sanctions on the attorney

15  or attorneys responsible.

16          After this proceeding, I will enter on the docket a

17  written order in this case, as I typically do.  And that order

18  will more fully describe this obligation and the possible

19  consequences of failing to meet it.  And I direct Ms. Kim, the

20  prosecution, and both yourself and any of your colleagues on

21  this case, to review and comply with that order.

22          But for now, does the prosecution confirm that it

23  understands its obligations and will fulfill them?

24          MS. KIM:  Yes, your Honor, we understand.

25          THE COURT:  So let's set a date for a next conference.

LALVCRUA

1          Mr. Sosinsky, I think about 60 days out makes sense.

2     That would bring us to around December 20th.

3          How is December 20th at 2 p.m. for the parties?

4          MS. KIM:  That works for the government, your Honor.

5          MS. MACEDONIO:  Your Honor, I happen to have a

6     sentencing on that date.  Would it be possible just to do this

7     right after the new year?

8          THE COURT:  I think that would be fine, given the

9     volume of discovery here, assuming it's a request from the

10    defendant.

11         MR. SOSINSKY:  Yes, sir.

12         THE COURT:  How is January 4th at 2 p.m. for the

13    parties?

14         MS. MACEDONIO:  That's fine.  Thank you, your Honor.

15         MS. KIM:  That works for the government.  Thank you.

16         THE COURT:  Oh, great.

17         I gave a specific date and time, although we are still

18    in a situation where I cannot schedule definitively court

19    appearances if the defendant remains in custody.  I assume by

20    then he will have met his bail conditions and will no longer be

21    in custody, so we could rely on that date and time.

22         If for whatever reason he is not at liberty on that

23    date, we'll confirm closer to that date and time that it is

24    going forward at 2 p.m.  But I expect obviously that he will be

25    released by then.

LALVCRUA

1          At that conference, of course, I'll ask defense

2     counsel as to a status of their review of discovery and whether

3     you are in a position to report on any anticipated motions.  I

4     very well may set a motion schedule and a trial date at that

5     conference.  Although I do appreciate the challenges posed by

6     the pandemic in reviewing discovery, especially the volume at

7     issue in this case.  So we'll see where we are on January 4th.

8          As the parties, I think, know, if for whatever reason

9     a resolution is reached in this case, please reach out to

10    Ms. Henrich and we'll schedule the appropriate proceeding

11    before me.

12          I believe that covered everything I wanted to address

13    this morning.  Is there anything else from the parties?  I'll

14    start with the defendant.

15          MS. MACEDONIO:  Your Honor, may I have a moment with

16    the attorney for the government?

17          THE COURT:  You may.

18          (Counsel conferred)

19          MS. MACEDONIO:  Your Honor?

20          THE COURT:  Yes.

21          MS. MACEDONIO:  Mr. Cruciani is being held at the

22    Essex County Jail in New Jersey.  Since the bond has been

23    issued and since he needs to personally sign, we're asking that

24    the marshals afford him the opportunity to sign the bond today,

25    even though he won't be released until the additional

LALVCRUA

1   conditions are met.  The interviews of the suretors are going

2   to be done by telephone, so that can be expedited.  But if he

3   can sign the bond today and perhaps remain in the building in

4   the event that we are able to satisfy those conditions, there's

5   a possibility that he might be able to be released today.

6          THE COURT:  Let me ask first the marshals if that's

7   even possible, because I don't know what the transport

8   situation is like with Essex.

9          Do you know if that's even a possibility?

10          THE MARSHAL:  Your Honor, if I may.  He usually is the

11   last person to sign the bond.  Once he signs, we do our

12   administration on our end.  And then after all that's cleared,

13   that's when the defendant will be released.  So usually we'll

14   have the three or two cosigners sign.  All that is done

15   logistically before he has the opportunity to sign.

16          He could stay in the building if he's potentially

17   going to get released today.  We usually try to take back,

18   since he's an early court, we try to do two runs just so they

19   are not sitting here all day.  But if he has the potential of

20   getting out, we'll talk to the supervisor in the criminal

21   section so he can wait around a little longer than usual.

22          THE COURT:  I appreciate that.  Thank you.

23          I completely defer to the marshals as to what can or

24   cannot be done.  But if it's possible for the supervisor to

25   approve him, to wait until the last return to Essex, so if we

LALVCRUA

1    can see if the conditions are met, that would be great.

2    Although he should not sign the bond until all the cosigners

3    have signed the bond.  But thank you very much.

4              Appreciate that.

5              MS. MACEDONIO:  Thank you, your Honor.

6              THE COURT:  Thank you.

7              Anything else from the government or an application?

8              MS. KIM:  Yes, your Honor.

9              The government respectfully requests that the Court

10   exclude time from today until January 4th, 2022.  The exclusion

11   of time would be in the interest of the public, because it

12   would allow the defense to review discovery and for the parties

13   to discuss any potential pretrial dispositions.

14             THE COURT:  And Mr. Sosinsky or Ms. Mass?

15             MR. SOSINSKY:  No objection, sir.

16             THE COURT:  I will exclude time from today until the

17   next conference on January 4th, 2022, pursuant to Title 18,

18   United States Code, Section 3161(h)(7)(A).

19             I find that the ends of justice served by excluding

20   such time outweigh the interests of the public and the

21   defendant in a speedy trial.  And those are for the reasons

22   that Ms. Kim just mentioned:  to allow the review of discovery

23   by the defendant and his attorneys, discovery should be

24   produced within the next few weeks; and also to allow the

25   parties to discuss any resolution of this matter.

LALVCRUA

1      Are there any other matters that the parties wish to

2 take up this morning?

3      MS. KIM:  No, thank you, your Honor.

4      MS. MACEDONIO:  No, thank you, Judge.

5      THE COURT:  Thank you.

6      This conference is adjourned.

7      I will see the parties and the defendant again on

8 January 4th.

9      Have a good day.

10                          *    *    *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25