M2E6CRUC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                          21 CR 636(JPC)

5  RICARDO CRUCIANI,                       Conference

6              Defendant.

7  ------------------------------x

8                                          New York, N.Y.
                                           February 15, 2022
9                                          10:00 a.m.
   Before:
10
                    HON. JOHN P. CRONAN,
11
                                           District Judge
12
                         APPEARANCES
13

14 DAMIAN WILLIAMS,
        United States Attorney for the
15      Southern District of New York
   BY:  JANE KIM
16      Assistant United States Attorney

17 DAVID PATTON
   FEDERAL DEFENDERS OF NEW YORK, INC.
18      Attorney for Defendant
   BY:  DANIEL HABIB
19      MARK B. GOMBINER

20

21

22

23

24

25

M2E6CRUC

1          (Case called)

2          DEPUTY CLERK:  Counsel starting with the government,

3     please state your name for the record.

4          MS. KIM:  Good afternoon.  Jane Kim for the

5     government.

6          THE COURT:  Good morning, Ms. Kim.

7          MR. GOMBINER:  Mark Gombiner and Daniel Habib for

8     Mr. Cruciani.  And, Judge, Mr. Habib is in our appeals unit,

9     and he was the one who basically did the response here, and, in

10    that respect, I have to apologize to the Court when I ask

11    Mr. Habib to do this.  I neglected because I completely forgot

12    that the Court had requested us to address certain specific

13    cases, but Mr. Habib is definitely prepared to do that now.

14         THE COURT:  Excellent.  Thank you, Mr. Gombiner.  And,

15    Mr. Habib, it's good to see you.

16         MR. HABIB:  Likewise, your Honor.  My pleasure.

17         THE COURT:  And good morning to Mr. Cruciani as well.

18         First of all, thank you for appearing on relatively

19    short notice for this proceeding.  As Mr. Gombiner just

20    previewed, the purpose of today's proceeding is to address

21    Mr. Cruciani's application that certain documentation submitted

22    in support of his request for appointment of counsel under the

23    Criminal Justice Act be filed *ex parte* and under seal.  And the

24    documents that we're talking about are the initial CJA form.  I

25    believe it's Form 23, which is the one-page financial affidavit

M2E6CRUC

1    used in most cases.  And, here, it's dated November 29th, 2021.

2    And also a supplemental affidavit for Mr.  Cruciani with an

3    appendix that I received initially under seal on January 26th,

4    2022.  And that supplemental affidavit was submitted in light

5    of questions I had as to the defendant's financial eligibility

6    for a court-appointed counsel.  It was for a few reasons,

7    including his former employment, various property that was

8    posted in connection with his release on bail, and that he

9    initially appeared with retained counsel.

10         So I've reviewed the supplemental submissions letter

11   from the Federal Defenders dated February 2nd, the government's

12   letter dated February 9th.  And I thought it would be most

13   efficient to have this conference to discuss the application

14   and possibly resolve it as well.

15         Mr. Gombiner, let me start with what you just touched

16   upon.  The government's submission addressed a few authorities;

17   the Second Circuit decision in *Harris* and *Suarez*,

18   Judge Furman's decision in *Avenatti*, I believe Judge Sweet's

19   decision in *Hilsen*, and the district CJA plan.  Why don't I

20   give you and Mr. Habib a chance to orally respond to those

21   authorities, then?

22         MR. GOMBINER:  Mr. Habib.

23         THE COURT:  Thank you.  And, Mr. Gombiner, expect us

24   to be done by 10:45.  I know you have something after this.

25         MR. GOMBINER:  Yes.

M2E6CRUC

1        THE COURT:  But if we get close and you need to leave

2    and let Mr. Habib handle anything that remains --

3        MR. GOMBINER:  That would be great.  That would be the

4    most efficient way to do it.  Thank you, Judge.  I know

5    Mr. Habib can handle it.  Thank you.

6        MR. HABIB:  Thank you, your Honor.  I appreciate it.

7        Let me address the questions that the Court posed at

8    the last appearance.  I think the first one, which can be

9    addressed most easily, is Section VI(E) of the district CJA

10   plan, Section V of this district's CJA plan, which I have

11   brought copies, if the Court or the government wants, and they

12   indicate that the judicial conference guidelines are

13   incorporated by reference into this district's CJA plan.

14       THE COURT:  Mr. Habib, you're welcome to stay seated

15   if you prefer.  It might be easier with our masks.  It's a lot

16   easier if the microphone is closer.

17       MR. HABIB:  Okay.  Thank you, your Honor.

18       Section V of this district's CJA plan says, quote,

19   representation pursuant to this plan shall be furnished to any

20   person financially unable to obtain adequate

21   representation...in the circumstances set forth in

22   18 U.S.C. 3006A, and in the guidelines promulgated by the

23   Administrative Office of the United States Courts...which are

24   incorporated by reference.

25       As was noted in our supplemental filing and that of

M2E6CRUC

1    prior counsel, those guidelines expressly provide that

2    documents submitted in connection with an application for CJA

3    counsel will be maintained under seal and disclosed neither to

4    the government nor to the public.  And so in light of that

5    expressed incorporation of those guidelines, I think it would

6    be incorrect to interpret VI(E) to abrogate by implication

7    those incorporated guidelines.

8         What I think Section VI(E) is getting at is in the

9    circumstances where the government does come to learn of the

10   contents of materials submitted in connection with an

11   application, as for example, when a defendant chooses to

12   testify to his eligibility in open court, as the plan

13   contemplates, the government, as in *Branhart*, would be

14   precluded from using that material in its case and chief.  I

15   don't think it can be read as broad disclosure authority.

16        The Court also asked Mr. Cruciani to address the

17   circuit's decision in *Harris* and *Suarez*.  What I'll say is

18   neither decision is dispositive, as I think even Judge Furman

19   recognized in *Avenatti*, neither concerned an application such

20   as the application at issue here.

21        *Suarez* holds that there's a First Amendment interest

22   in CJA vouchers, but *Suarez* locates that interest in, quote,

23   the public's strong interest in how its funds are spent in the

24   administration of criminal justice and what amounts of public

25   funds are paid to particular private attorneys.

M2E6CRUC

1          The financial affidavit at issue here indicates

2     different interests.  It doesn't reflect how much attorneys are

3     being paid, it doesn't reflect how much experts are being paid.

4     It indicates how much a single defendant that this Court has

5     determined to be entitled to CJA representation has and what

6     assets certain family members of his have.

7          That said, the First Amendment interests discussed in

8     *Suarez* can be fully accommodated through existing provisions of

9     the CJA.  So, for example, Section 3006A(d)(4)(A) provides that

10    amounts paid to counsel shall be made available to the public,

11    and Subsection (e)(4) provides that amounts paid to experts and

12    other support services shall be made available to the public.

13    So those interests can be addressed without disclosure of the

14    financial affidavit.

15          It's also true in *Suarez* that the only countervailing

16    interest the defendant asserted was a prejudice to his trial

17    rights; that is, the defendant was concerned that disclosure of

18    the amounts that the public had financed for his defense might

19    prejudice his jury in his upcoming trial.

20          And so *Suarez* had no occasion to consider the

21    countervailing interest we've asserted here, which is the

22    financial privacy and personal privacy of Mr. Cruciani, and in

23    addition, innocent third-party family members discussed in the

24    financial affidavit.

25          I would also note that *Suarez* relies on the judicial

M2E6CRUC

conference guidelines to conclude that if disclosure would,

quote, unduly intrude on defendant's privacy, the disclosure

might not be warranted or that sealing would be appropriate.

THE COURT:  I'm sorry.  Forgive me.  Why can't that be

achieved by redaction?

MR. HABIB:  So, obviously, our fallback position would

be that redaction would be appropriate as to much of the

information in the affidavit, but I think before we get to that

point, before we begin redacting sort of line by line, I would

urge the Court to consider -- and I can make this point in

greater length in the course of presenting an affirmative

argument.  But to consider, A, whether these materials are

judicial documents in the first instance and, B, whether

countervailing interests weigh against disclosure.

So in a sense, we may be arguing about degrees of

redaction, but we would urge that full redaction in this

situation is appropriate.

*Harris*, as I read Harris, and I understand that

Judge Furman read it more broadly than I'm about to propose,

but I read *Harris* as a case about adversary proceedings, not

about public disclosure.

*Harris* affirmed the termination of CJA counsel where

the defendant declined to demonstrate his eligibility in an

adversarial proceeding.  He wanted an *ex parte* proceeding.  And

Judge Furman reads *Harris* to say -- and, granted there's

M2E6CRUC

1    language in *Harris* that talks about our judicial system's

2    aversion to secret proceedings.  But what I read *Harris* to say

3    is this is an adversarial process, and the government has a

4    role to play, and the government has a role to play in, as

5    appropriate, contesting financial eligibility.  *Harris* does

6    not, by its own terms, discuss the First Amendment or the

7    common law presumption of access.  Those considerations simply

8    aren't presented in the case.

9            In addition, the countervailing interest in *Harris*,

10   again, is not financial privacy of the defendant and third

11   parties; as here, it's the Fifth Amendment.  *Harris* holds that

12   that interest can be reconciled through use immunity.  It's not

13   the argument that Mr. Cruciani has pressed here.

14           THE COURT:  And you're arguing that it should be

15   *ex parte*; not just sealed.  You're seeking sealed, *ex parte*

16   treatment of the affidavit?

17           MR. HABIB:  And I recognize that is the tougher part

18   of our position, in light of *Harris*.  Except that I would say

19   *Harris* holds that *ex parte* presentation is inappropriate to

20   ensure adversarial testing.  This Court has already determined

21   that Mr. Cruciani is eligible for counsel, so I'm not sure what

22   further role, barring the government's discovery of additional

23   financial information and adversarial process, would play in

24   this specific case.

25           As to Judge Furman's opinion in *Avenatti*, obviously,

M2E6CRUC

1    it holds against us.  That said, it's entitled to persuasive

2    force only.  But let me address the role of the judicial

3    conference guidelines in the context of that case.

4          This Court pointed out, as Judge Furman did, that the

5    guidelines can't supersede the First Amendment, and we agree

6    with that, obviously.  But the guidelines aren't just policy

7    statements.  They're promulgated pursuant to a statutory

8    delegation of authority, and that's at Section 3006A(h), as in

9    Harry, which directs the judicial conference to promulgate

10   regulations concerning the administration of the CJA.  And, in

11   that sense, they absolutely can displace, for example, the

12   common law presumption of access.  That's the purpose of

13   codified law, is to displace common law where deemed

14   appropriate.

15          THE COURT:  Putting aside the First Amendment right to

16   access, if that didn't exist, would it be your view that a rule

17   promulgated or a rule promulgated pursuant to section 3006A(h),

18   that was inconsistent with the common law right of access would

19   prevail over the common law right of access?

20          MR. HABIB:  Yes, your Honor.  In the same way the

21   federal rules of evidence have the ability to displace common

22   law privileges, for example.

23          In addition, as to the Constitutional question, I

24   don't think this Court should assume that either the judicial

25   conference or the framers of the rule 49.1, the rules of

M2E6CRUC

1   criminal procedure and the drafters of the Advisory Committee

2   Notes, would likely disregard the First Amendment interests at

3   issue here.  Indeed, the Supreme Court has said with respect to

4   the judicial conference that its rules are entitled to respect,

5   and Judge Weinstein made the same point in the case cited in

6   our papers.

7          In addition, the Supreme Court said in *Vaughan*, when

8   construing the meaning of the rules of criminal procedure, the

9   Advisory Committee Notes is entitled to weight.  It's of

10  weight.  And the Advisory Committee Notes clearly contemplates

11  that if the rule doesn't, by its own terms, provide for sealing

12  that rule 49.1(d) and (e) should be used to effectuate the

13  objective of shielding this information from public disclosure.

14         So I would say I take the Court's point that the

15  guidelines can't trump the Constitution, but I think they

16  absolutely can trump the common law, and I think they are

17  entitled even in the Constitutional analysis to very respectful

18  consideration because they reflect the considered judgment of

19  judges and players in the criminal justice system.

20         The Court also asked us to address Judge Sweet's

21  decision in *Hilsen*.  I view *Hilsen* as a pretty straightforward

22  application of *Harris*.  I don't see that as advancing the

23  analysis, although it certainly was, as was Judge Sweet's wont,

24  comprehensive.

25         Let me address the merits of Judge Furman's views in

M2E6CRUC

*Avenatti.* And I would say this: It's really a three-step

process. Is this a judicial document? If so, what weight is

afforded the presumption, and what are the countervailing

interests asserted?

We respectfully disagree with Judge Furman's

conclusion that this document is a judicial document. We urge

the Court to follow the First Circuit in that respect.

Judge Furman indicated it's an open question in this circuit

whether this specific document is judicial.

And I would just say without belaboring the point, a

CJA affidavit is I think far removed from what the circuit has

said is the core of judicial documents, which is case

adjudication. As the Court knows, Article III judges rarely

have occasion to review CJA financial affidavits, and the vast

majority of case, that's done by the magistrate on the day of

presentment.

Even in *Brown v. Maxwell*, the Second Circuit said that

even materials related to -- for example, for the management of

discovery or the presentation of evidence at trial via motions

*in limine* would be subject to a weaker presumption. This

document is farther removed still.

THE COURT: So I guess what I'm struggling with,

Mr. Habib, certainly, I understand your point that usually

often the defendant makes, but the case law seems to have

struck that whether something is a judicial document turns on

M2E6CRUC

1   whether the document is relevant to the performance of a

2   judicial function, which is defined to include the exercise of

3   supervisory powers.

4            The financial affidavits here were used by me to

5   decide whether your client is eligible for publicly funded

6   counsel.  Even if that's not how the judicial function may

7   often be thought about in a day-to-day proceeding in this

8   courthouse, why isn't that relevant to my exercises for

9   supervisory powers?

10           MR. HABIB:  I think the best thing I could say about

11  that, your Honor, is that as the First Circuit did, the

12  determination of CJA eligibility is more properly characterized

13  as an administrative rather than a judicial responsibility.

14  But as I said, I don't want to belabor that point.

15           Let me talk about interest balancing here because I

16  think we have certainly a stronger case there.

17           So, again, in *Avenatti*, as in *Harris*, the only

18  countervailing interest asserted was the Fifth Amendment, which

19  we haven't pressed here.  *Avenatti* follows *Harris* by using use

20  immunity to reconcile those interests.  We are asserting

21  different countervailing interests here.  And so at the second

22  step, you not only weigh the strength of the presumption, which

23  if the Court concludes these are judicial documents, I think,

24  at best, the presumption would be at its weakest with respect

25  to these documents.  And against that, we've asserted -- I want

M2E6CRUC

1    to assert a couple of interests; one, obviously, is the

2    financial privacy of Mr. Cruciani and the innocent third

3    parties who are discussed in the financial affidavit.  As we

4    demonstrated in our prior supplemental filing, financial

5    privacy is routinely cited as a basis to justify sealing,

6    including by the Second Circuit in one of its *Amadeo* decisions.

7            In addition, I think there are profound

8    Sixth Amendment interests at play here.  We touched on them in

9    our brief, but they are these.  The Sixth Amendment entitles

10   any indigent defendant to the appointment of counsel upon

11   demonstration of eligibility.

12           If CJA affidavits are routinely disclosed to the

13   public, that's going to exert a significant chill on the

14   exercise of the Sixth Amendment right.  In particular, it's

15   going to exert a chill because this matter is typically

16   adjudicated on the day of presentment, which as the Court knows

17   it is a busy day, it's a hectic day, defense counsel has met

18   its client for the first time, defense counsel has numerous

19   tasks on that day, including explaining the complaint,

20   attending the pretrial services interview, communicating with

21   family members to secure a bond, communicating with family

22   members to potentially identify property that can be used to

23   secure a bond, discussing with the prosecutor the conditions of

24   pretrial release order, appearing in the magistrate court for

25   the presentment, times the three or four or five cases that a

M2E6CRUC

1    defense lawyer might get on a duty date.

2            To layer into that process, the additional

3    complication of not only must you complete the financial

4    affidavit, but I must tell you that your answers are going to

5    be made public, not only to the prosecutor, but to the world,

6    would have, I think, Number One, a significant chilling effect

7    on the defendant's exercise of his rights, and Number Two,

8    serious consequences for the efficient administration of

9    justification in magistrate court.

10           If I can make the point more concretely, many of the

11   Federal Defenders' clients appear for presentment, and they

12   complete a financial affidavit that says that they essentially

13   have de minimis assets and significant debt.  They may not be

14   working, they may have credit card debt, car debt, et cetera.

15   That's a lot of information for a person who's been arrested

16   for the first time maybe in his life, to disclose to the world

17   on what's probably the worst day of his life.

18           It would be extraordinarily difficult and add to the

19   already difficult task of appointed counsel on the day of

20   presentment to explain that process in addition to all the

21   other tasks counsel has on that day.  And I don't think it's a

22   reach, and I don't think it's speculation to say that some

23   indigent defendants who are entitled — unquestionably,

24   factually entitled — to appointment of counsel will be

25   dissuaded from requesting it through shame or embarrassment or

M2E6CRUC

1    fear, or for example, the interests of third parties that they

2    would be required to disclose.  For example, the financial

3    affidavit asks do you have dependents, and a dependent might be

4    a spouse or it might be a sibling or a parent.  All those

5    things might be the source of reticence to assert their

6    Sixth Amendment right.

7            So I think in that respect, and returning, if I may,

8    to both the guidelines and the Advisory Committee Notes, when

9    this Court is weighing countervailing interests, I think it

10   should not only give respectful consideration to those

11   authorities on the question whether these are judicial

12   documents, but whether the interests of the defendant in

13   asserting his Sixth Amendment right, when he has it — that is,

14   when he's entitled to appointed counsel — and of the magistrate

15   court in processing the many cases they come across on a duty

16   day, recommend or rule according to which the defendant can

17   simply complete the affidavit quickly and candidly,

18   confidentially that the affidavit is being used for nothing

19   other than the determination of the appointment of counsel,

20   period.

21           I should also note that there will be cases in which

22   it would be ineffective assistance for defense counsel not to

23   talk about the strategic consequences of making a full

24   disclosure on a financial affidavit.  And defense counsel is

25   particular in cases of financial crimes, and I take the point

M2E6CRUC

1    there's use immunity, but that's not the only -- you know, use

2    in case in chief is not -- barring use in case in chief is not

3    the same as barring use --

4            THE COURT:  And I take your point that there may be

5    cases where that would be a stronger argument.  There's not a

6    Fifth Amendment argument here, though.

7            MR. HABIB:  We haven't pressed them on this case, no.

8            THE COURT:  And your chilling argument, your argument

9    that if you chill the right to counsel, was that made before

10   Judge Furman or Judge Oetken in a similar way in *Correia*?  Do

11   you know if that was made before either of those courts?

12           MR. HABIB:  I don't know what arguments were made in

13   Judge Oetken's case, truthfully.  I reviewed the papers in

14   Judge Furman's case.  I don't think that argument was pressed.

15           Can I check and tell the Court?  The Court can also

16   use PACER too.  I don't know the answer, Judge.

17           THE COURT:  Do you think it matters, given the posture

18   here, and that it is not a typical situation like you were just

19   describing, but rather we have a defendant who appeared with

20   three retained counsel, posted very sizable bail by posting, I

21   believe, three properties, and based on the allegations,

22   appeared for much of his life to have a high-paying job?  Does

23   that factor in?

24           MR. HABIB:  Those factors certainly warranted this

25   Court in making inquiry, which this Court did.  But I think

M2E6CRUC

1   we're now addressing a distinct question, which is disclosure.

2   And, again, not only did this Court make inquiry, but this

3   Court made a determination.  So I think the interests reflected

4   by the factors the Court just mentioned have been addressed.

5          I think that's what I had to say, but I'm happy to

6   answer the Court's questions.

7          THE COURT:  Thank you.  I think you answered --

8          MR. HABIB:  If I could make one more point, your

9   Honor, which is specific to this case.

10          The circuit has indicated that whether documents are

11   judicial is an inquiry that is often made on a categorical

12   basis, right?  That is to say, is a motion for summary judgment

13   a judicial document or not, and sort of the case-specific

14   considerations are addressed at the balancing stage.

15          At the balancing stage here, we have what this Court

16   determined was appropriate, was to order Mr. Cruciani to

17   complete, under penalty of perjury, an affidavit that is far

18   more detailed than the CJA Form 23, and that was appropriate.

19   The Court was discharging its statutory responsibility to

20   assess financial eligibility.

21          That said, the privacy implications here are quite

22   different than with respect to a one-pager.  There's much more

23   information presented in Mr. Cruciani's affidavit.  In

24   addition, there's information that pertains to his health that

25   I'm sure the Court observed.

M2E6CRUC

1          And so the privacy interests here are much greater

2     than those that were at stake in *Avenatti*; not just because the

3     financial affidavits were less detailed in *Avenatti*, but

4     Mr. *Avenatti* was ill-positioned to complain about violations of

5     his privacy.  And, in addition, the government had conducted a

6     fairly thorough investigation of his finances, as Judge Furman

7     pointed out, so that his financial privacy interests were

8     minimal, given that investigation, and I'm not sure that's the

9     case here.

10          THE COURT:  And when going back to your argument that

11     the presumption is weaker in this context, how does the

12     Sixth Amendment right to counsel come into play here?  In other

13     words, the determination that needs to be made based on the

14     financial affidavit goes to an extremely significant

15     Constitutional right, and that Constitutional right is

16     extremely significant, but the right to counsel is undoubtedly

17     significant both to the defendant and also to the public.  How

18     does that come into play in assessing whether the presumption

19     is strong or weak?

20          MR. HABIB:  I think it comes into play in the

21     following way:  That a categorical rule, to the extent one is

22     adopted, should, to the greatest extent possible, unburden the

23     exercise of the Sixth Amendment right.  That is to say, any

24     rule that could dissuade a defendant from asserting his

25     Sixth Amendment right or resulting him foregoing an available

M2E6CRUC

1   benefit under the Sixth Amendment should be disfavored.

2   Rather, the rule that's appropriate in this context is one that

3   encourages candid disclosure and an accurate determination of

4   eligibility above all.

5          And in the specific context of financial privacy,

6   which is a value that many Americans hold dear, that balance

7   should be struck in favor of nondisclosure to encourage

8   frankness throughout the evaluation of the application.

9          THE COURT:  Thank you, Mr. Habib.

10          Ms. Kim, let me turn to you.  I guess I'll start with

11   anything you wish to respond to that Mr. Habib just raised.

12          MS. KIM:  Sure, your Honor.  Thank you.

13          I will try not to repeat what is in our submission,

14   but just responding to some of defense counsel's arguments:

15          With respect to the CJA plan and its incorporation of

16   judicial policy, by reference, of course, neither the CJA plan

17   nor the judicial policy are binding, and the precedent set by

18   the Second Circuit certainly trumps here.

19          As Mr. Habib has said, where there's a tension between

20   a Constitutional right and judicial policy, the Constitution

21   also here prevails.  And it is worth noting that the defense

22   has addressed the analysis under common law, but under the

23   First Amendment, there's an even higher burden that's placed on

24   the defense in weighing interests of the defendant versus

25   public access under the First Amendment.

M2E6CRUC

1          In terms of *Suarez*, which is a First Amendment case

2      and touches upon common law, Judge Furman addressed *Suarez*, and

3      explained that there is actually even more of a reason in cases

4      involving CJA financial affidavits versus the types of

5      documents that were at issue in *Suarez*, and the reason why

6      there's more of an interest in public access to financial

7      documents than even those in *Suarez* is because they, of course,

8      play a critical role in the Court's determination of the

9      defendant's Sixth Amendment right to counsel, for

10     court-appointed counsel.

11         The documents that are at issue in this case are

12     subject to penalty of perjury and are in the context of a

13     motion that's before the Court.

14         I think what is important to sort of focus on in this

15     case is the heart of the matter; first, the fact that the

16     Second Circuit has held that these types of questions should be

17     aired in adversarial proceedings.  And the defense has conceded

18     that the government has a role to play here, but the government

19     can't really play a role because we haven't seen any of the

20     defendant's financial materials, so we can't take a position or

21     potentially correct something that may be incorrect.

22         In *Avenatti*, Judge Furman explained that the

23     adversarial proceedings are particularly important, because

24     they discourage perjury, they assist the Court in its judicial

25     function, and they ensure that the decision that's ultimately

M2E6CRUC

1    reached is one that's weighed and considered based on facts and

2    potential challenges to those facts.

3        The second sort of important question at the heart of

4    the matter is the fact that these documents are of public

5    importance.  A member of the press has already written in and

6    asked for access to the documents on two occasions.  And the

7    reason why public importance and public access is important in

8    this case is because public access assures that these

9    procedures are approached in a fair and transparent manner.

10       I think there's a public question as to how formally,

11   sort of wealthy individuals, wealthy defendants, once they

12   appear in federal court, move for court-appointed counsel, and

13   that has been commented on in the press in the context of

14   *Avenatti* and also in this case.  And so I think there's a

15   public question of how are tax dollars being spent.  And in

16   that sense, there's an importance in public access to these

17   documents.

18       In terms of the chilling effect that the defense has

19   alluded to, in this particular case, it seems that ensuring

20   that there's an adversarial process and there's public access

21   to these documents would further ensure that the contents of

22   the documents are accurate, because they could potentially be

23   challenged by the government and information that the

24   government has and/or by members of the public.

25       The policy arguments, I'm not sure if Judges Furman

M2E6CRUC

1    and Oetken had addressed sort of the day-of presentment

2    arguments, but as the Court noted, this particular case is

3    distinguishable because there has been a question here and a

4    concern about the defendant's financial eligibility, given his

5    past practice as a physician and the multiple properties that

6    he had purchased before he was charged in this case.

7            And so, here, the defendant is not relying on the

8    Fifth Amendment to advocate for sealing and *ex parte* filing of

9    these documents.  He has not made a Constitutional claim.  He's

10   making a claim of privacy.  And we haven't seen the document so

11   we can't offer potential redaction suggestions, but it appears

12   that those third-party privacy concerns could be addressed

13   through redactions.

14           THE COURT:  Why should this case be treated

15   differently than the normal criminal case?  I mean, I'm sure

16   right now today in magistrate court a number of defendants will

17   be signing financial affidavits, and none of those one-page

18   affidavits are likely to be publicly filed or publicly

19   available.  Why should this be different?

20           MS. KIM:  Your Honor, this case is certainly different

21   because the defendant appeared initially with retained counsel.

22   He has retained counsel and is able to pay retained counsel in

23   other matters.  And his history shows that he, at one time, had

24   the financial assets to, for example, purchase property, to

25   obtain retained counsel, to live a comfortable lifestyle.  And

M2E6CRUC

1    he was a practicing physician holding esteemed positions at

2    various medical institutions for years and years.

3         These are points that the Court touched upon at our

4    last proceeding.  But this case is distinguishable because

5    there is a question of, for the public, how a defendant like

6    Mr. Cruciani, who seems to have amassed certain wealth and

7    assets over the last couple of decades could be financially

8    eligible for court-appointed counsel.

9         I think there's a second question for the Court, which

10   the Court raised when the motion was made for court-appointed

11   counsel of whether or not the defendant has certain assets and

12   actually is eligible for court-appointed counsel given his

13   financial background, and so I think the difference is, here,

14   there are certain defendants on the day of presentment who

15   defense counsel have said have likely de minimis assets and not

16   very much to disclose.  There's also a presentence report that

17   comes out the day of the presentment as well, and so there's

18   less of a question of whether or not those defendants are

19   eligible for court-appointed counsel, whereas here, there are

20   concerns and there are open questions both for the Court and

21   for the public.

22         THE COURT:  Ms. Kim, what's the government's view as

23   to whether if the financial affidavit were unsealed and

24   provided to the government, whether the government would be

25   permitted to use any of that in a case in chief?  In other

M2E6CRUC

1   words, do you read *Harris* as essentially saying the government

2   cannot use this?  There needs to be some degree of use immunity

3   here.

4           MS. KIM:  Certainly.  Based on Second Circuit

5   precedent, it appears the government would not be able to use

6   the defendant's financial affidavits in its case in chief,

7   unless it's a case for perjury or false statements.

8           THE COURT:  Okay.  Thank you.  Mr. Habib, anything

9   further?

10          MR. HABIB:  May I make a few brief points, your Honor?

11          First, in this case, the eligibility determination has

12   been made.  This Court reviewed the affidavit which set forth

13   in excruciating detail why Mr. Cruciani is unable to retain

14   counsel at this juncture.  It was said in public, so I would be

15   at liberty to repeat it here, that his assets have been

16   substantially depleted over the course of the past. four and a

17   half years as he has defended litigation in multiple other

18   jurisdictions.

19          As I think Ms. Macedonio pointed out at a prior

20   hearing, he spent approximately $1.4 million to pay retained

21   counsel in other cases, and that's why, presumably, this Court

22   concluded he's entitled to counsel here.

23          THE COURT:  And I realize you're not counsel, neither

24   you nor Mr. Gombiner were counsel at that point, but granted,

25   without the level of detail in the second affidavit, isn't a

M2E6CRUC

1    lot of it out of the bag from that proceeding?

2              MR. HABIB:  Come again, your Honor?

3              THE COURT:  Isn't a lot of the information out there

4    from that proceeding?

5              MR. HABIB:  From prior -- for what?

6              THE COURT:  I'm sorry.  I think it was

7    December 2, 2021, where this issue was first raised, certainly

8    with nowhere close to the level of detail in the January 6, I

9    believe, affidavit.  But to some extent, weren't some of these

10   issues aired in open court?

11             MR. HABIB:  Obviously, to the extent an issue has been

12   aired in open court, the privacy interests have dissipated.

13             The second point I'd like to also make is with respect

14   to accuracy.  I'd say two things.  One, I think in the vast

15   majority of cases, the knowledge that a financial affidavit is

16   going to be publicly disclosed is going to harm rather than

17   hurt the accuracy determination.  To put it very concretely,

18   Mr. Gombiner and I many times at magistrate court will go

19   through a financial affidavit, and we'll learn a defendant has

20   substantial debt for maybe embarrassing reasons, like a

21   gambling debt or a credit card debt or supporting an unemployed

22   family member.  And I can easily imagine why a defendant would

23   not want to put that information before the public on the day

24   of his arrest.

25             In addition, there are significant checks on the back

M2E6CRUC

1    end that ensure a proper determination.

2                   So, for example, there is in connection with the

3    preparation of a presentence report, there are going to be

4    financial disclosures that are going to be sought in a case

5    where there's the possibility of forfeiture or fine or

6    restitution.  Those disclosures are going to be material there.

7    The government, of course, is investigating as the case

8    progresses, and the government may come into possession of

9    information that calls for the defendant's financial

10   eligibility into question.

11                  All of those sources of information can be brought to

12   bear retrospectively.  And, by the way, pursuant to 3006A(f)

13   the Court can see recoupment if it's determined that

14   appointment of counsel was inappropriate.

15                  Of course, the financial affidavit is also prepared

16   under penalty of perjury, which is a serious oath and a serious

17   obligation that dissuades defendants from untruthful

18   representations.

19                  Finally, I would say, I am pleased that Ms. Kim

20   recognizes that under *Harris* the government would be precluded

21   from using this material in its case in chief.  As I've alluded

22   to earlier, that's not the only use that this information could

23   be put.  It could be used to develop investigative leads, and

24   it could also be used to identify assets that are subject to

25   forfeiture and restitution and potentially to seizure prior to

M2E6CRUC

1   an adjudication of guilt, and so those interests would not be

2   protected.

3          The last thing I'll say is Ms. Kim indicated that we

4   weren't making a Constitutional argument with respect to the

5   Fifth Amendment.  That's true.  We are very much pressing a

6   Constitutional argument wit with respect to the Sixth.

7          THE COURT:  Let me also note for the record that

8   Ms. Kim alluded to an e-mail I received.  The e-mails are two

9   correspondences in support of unsealing from Matthew Russell

10  Lee, who is with a media outlet called Inner City Press.  The

11  first is dated January 10, 2022, and the second was dated

12  February 2, 2022.

13         The second submission specifically responded to the

14  Federal Defenders' submission earlier that day.  As we learned

15  of these letters, because the government referenced them in

16  their submission, both letters were e-mailed to my chambers'

17  inbox but were automatically diverted to my junk mail folder.

18  So when I saw the government's submission, I was able to dig

19  them out, and I have reviewed them.

20         While Inner City Press has not formally moved to

21  intervene and is not a party in this case, I have considered

22  both letters in connection with today's proceeding.  By and

23  large, many of the arguments in those letters are in line with

24  the arguments presented by Ms. Kim on behalf of the government

25  in support of disclosure and unsealing.

M2E6CRUC

1          Does either counsel have any objection to me putting

2    those letters on the docket?  Ms. Kim?

3          MS. KIM:  No, your Honor.

4          MR. HABIB:  No, your Honor.

5          THE COURT:  I will do so most likely later today.

6          All right.  Let me turn now to my ruling on this

7    matter.  And I thank the parties for their excellent written

8    submissions and very thorough and helpful argument today.

9          In addition to the parties' submission, I have

10   reviewed the relevant case law, both in this circuit and out of

11   this circuit, and this district's CJA plan.

12         With respect to the specific facts presented here in

13   this case, I agree with the weight of authorities in the

14   Second Circuit on this issue, and deny the application to file

15   the defendant's November 29, 2021 and January 6, 2022 financial

16   affidavits under seal and *ex parte*.

17         I am mindful of many of the issues raised by Mr. Habib

18   and Mr. Gombiner, and I will permit defense counsel to propose

19   redactions to those affidavits, especially as to the January 6

20   affidavit, which was quite detailed.

21         I will now state my findings.

22         The Criminal Justice Act mandates the appointment of

23   counsel for any person charged with a felony offense who is

24   financially unable to obtain adequate representation.  That's

25   at 18 U.S.C. Section 3006A(a).

1          Before a judge may appoint counsel under the CJA.  The

2     Court must conduct an inquiry into whether the defendant is

3     financially unable to obtain counsel.  The burden is on the

4     defendant to show his or her financial eligibility for

5     court-appointed counsel.  *United States v. Harris*, 707 F.2d

6     653, 660 (2d Cir. 1989).

7          Now, in this district, typically, this inquiry entails

8     a judge, usually a magistrate judge on duty that day,

9     considering financial information provided by the person

10    seeking appointment of counsel in the form of a sworn

11    affidavit.  Sometimes that may be under oath in open court

12    before the judge.

13         Now, it is well-established that there is a qualified

14    right of access to criminal proceedings under the

15    First Amendment.  One of many cites for that would be

16    *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 (1980).

17    This includes a right of access to pretrial proceedings and to

18    certain documents filed in connection with criminal

19    proceedings.  *Hartford Courant v. Pellegrino*, 380 F.3d 83, 91

20    (2d Cir. 2004).

21         And as I've discussed, there is also a common law

22    right of access to judicial documents, and I want to give a

23    cite for that, one of the main cases in this circuit on this

24    topic is *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3s 110, 119

25    (2d Cir. 2006).

M2E6CRUC

1          So let me start with whether Mr. Cruciani's financial

2     affidavits are judicial documents to which the presumption of

3     access applies, and I find that they are.

4          The Second Circuit has broadly defined that a judicial

5     document is a document that is relevant to the performance of

6     the judicial function and useful in the judicial process.  And

7     for that, *United States v. Amadeo*, 44 F.3d 141, 145 (2d Cir.

8     1995).  A document is relevant to the performance of the

9     judicial function if it would reasonably have the tendency to

10    influence a district court's ruling on a motion or in the

11    exercise of its supervisory powers.  And a cite for that is

12    *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019).

13         Judge Furman recently found in the *Avenatti* case, the

14    financial affidavits are relevant, indeed critical, to the

15    appropriate inquiry a court is statutorily mandated to conduct

16    when tasked with determining if a criminal defendant is

17    financially eligible for appointment of counsel at public

18    expense.  That's United States v. Avenatti, 2021 WL 3168145, at

19    *6, from Judge Furman's decision from July 27, 2021.

20         And I similarly conclude that the determination of

21    whether a defendant is eligible for appointment of counsel

22    under the Criminal Justice Act is a judicial function and

23    constitutes an exercise of a court's supervisory powers.  And

24    the financial affidavits submitted in this case by Mr. Cruciani

25    are plainly relevant to my performance of that function.

M2E6CRUC

1          I therefore find there's a qualified First Amendment

2    right of access to the financial affidavits.  Various other

3    decisions support this conclusion.  Some are very much on

4    point, like Judge Furman's decision in *Avenatti*, some are maybe

5    not directly on point, but certainly extremely instructive.

6          Other cases that are more on point, *United States v.*

7    *Correia*, a November 12, 2020 decision from Judge Oetken, that's

8    at 2020 WL 6683097, Judge Oetken there held that the

9    First Amendment right of access and the common law right of

10   access applied to financial information declarations in

11   connection with the defense counsel's motion to be relieved.

12   And I note in Judge Oetken's observation in *Correia* that it is

13   difficult to see why the financial affidavits at issue in

14   determining financial eligibility depart from the judicial

15   documents associated with criminal pretrial proceedings as to

16   which the Second Circuit previously recognized the

17   First Amendment right of access.  And that's at page 2 of that

18   decision.

19         To that end, the Second Circuit in *Harris* determined

20   that proceedings regarding a defendant's financial eligibility

21   for court-appointed counsel should not be held *ex parte* because

22   that would be manifestly conceptually incompatible with our

23   system of criminal jurisprudence.  That's at 707 F.2d at 662.

24   The court in *Harris* observed that while Congress obviously knew

25   how to provide for an *ex parte* proceeding when it seemed

M2E6CRUC

1    appropriate, and there, specifically, it mentions for services

2    other than counsel, and ensuring that a defense is not

3    prematurely or ill-advisedly disclosed, Congress did not do so

4    in the context of appointment of counsel.

5          And in *Suarez*, the Second Circuit held that there's a

6    First Amendment right of access to CJA forms on which judicial

7    officers have approved payments to attorneys or to others who

8    provided expert or other services to the defendant in that

9    case, such as investigators, interpreters, computer experts.

10   *United States v. Suarez*, which was a 1989 Second Circuit

11   decision, 880 F.2d 626.  And in *Suarez*, I should note this was

12   in the context of payment that had been approved.

13         I reviewed the First Circuit decision in *In re Boston

14   Herald, Inc.,* 321 F.3d 174, on which the defense relies in

15   support of this argument that a financial affidavit is not s

16   judicial document to which the presumption of access applies.

17         Of course, that decision is not binding on me, and

18   after reviewing the contrary case law by courts in this

19   circuit, I find those decisions, including the ones I just

20   mentioned, more persuasive.  I'm not inclined, therefore, to

21   adopt the First Circuit's reasoning in *Boston Herald*.

22         As Mr. Habib noted, that is the first step.  Because I

23   find that the financial affidavits at issue are subject to the

24   right of public access under the First Amendment, so the

25   affidavits may be kept under seal only as higher value in the

M2E6CRUC

First Amendment framework so demand.  And that requires in my

view and consideration of the specific facts of the case,

applying that framework to the specific facts of this case, I

find that any presumption has not been overcome.

I am mindful of the arguments raised about potential

chilling effect, the Sixth Amendment right.  I don't think that

is a particularly strong concern in this case, but in any

event, I believe that concern can be addressed by appropriate

redactions, which I will turn to in a moment.  But I do believe

there are compelling reasons for why the financial affidavits

at issue should be unsealed and provided to the government.

The defense contends that any presumption here is weak

at best because the financial affidavits are an ancillary

document that concern only the determination of Mr. Cruciani's

CJA eligibility, and that there are countervailing privacy

interests of Mr. Cruciani and his family and their personal

financial information, and those countervailing interests are

strong.

I'm not convinced that the presumption here is weak.

I think it is relatively strong.  The Criminal Justice Act

anticipates the involvement of a United States magistrate judge

or the court in nearly every phase of the appointment process,

including the determination of whether appointment of counsel

is appropriate.  That is from the act itself at 18 U.S. Code,

Section 3006A(c).  The determination of whether a criminal

M2E6CRUC

1  defendant is eligible for appointment of counsel under the

2  Criminal Justice Act directly implicates that defendant's

3  Sixth Amendment right to effective assistance of counsel, which

4  is significant.

5      The defense has argued that Mr. Cruciani's financial

6  privacy is at jeopardy, and here it's at jeopardy because he is

7  indigent, and under the government's view, to avail themselves

8  of their Sixth Amendment rights, poor defendants — and only

9  poor defendants — must surrender their privacy.  I do not read

10  the government's submission to go that far or to suggest such a

11  view, nor do I endorse such a view.

12      But applying the precedent in this circuit, it does

13  require me to balance Mr. Cruciani's privacy interests and the

14  privacy interests of third parties against the interests of the

15  public in knowing how public funds are spent.  *Suarez*, 880 F.2d

16  at 632.

17      Going back to what I said before about looking at the

18  specific facts of this case, in this case, I think the public's

19  interest is strong, given that Mr. Cruciani and his wife were

20  both practicing physicians, they own multiple properties,

21  Mr. Cruciani agreed to a $2 million personal recognizance bond

22  secured by three properties and multiple co-signers, and he

23  initially proceeded in this action with three retained counsel.

24      I do pause to note what was discussed toward the end,

25  as the Second Circuit indicated in *Harris*, this holding should

M2E6CRUC

1    not be read to mean that the government may use Mr. Cruciani's

2    affidavit against him as part of its direct case.

3         If there were to be any use of anything in the

4    affidavit, there would certainly need to be additional briefing

5    on that issue.  It sounds like that is not something that needs

6    to be addressed today.

7         But going back to the question of the privacy

8    interests, while I deny the application to file the entire

9    financial affidavits under seal and *ex parte*, I do recognize

10   there may be privacy interests to third parties to protect,

11   including of family members, particularly on account of the

12   nature of the second affidavit, which was quite detailed, as it

13   needed to be, because the original affidavit, which was just a

14   normal standard form, did not provide enough information for me

15   to assess financial eligibility — particularly, in light of the

16   information already before me that I just mentioned about

17   homeownership and the defendant's prior profession as well as

18   his prior retention of counsel, in this case and from what I

19   understand other cases as well.

20        And the government also seems agreeable to reasonable

21   redactions as expressed in its February 9th letter.

22        And Mr. Habib, I know it's not your preferred outcome,

23   but I assume the defense will want to propose redactions.

24        MR. HABIB:  Yes.

25        THE COURT:  So I will certainly consider redactions to

M2E6CRUC

1    account for any privacy interests.  Initially, I'll ask the

2    parties to meet and confer about that.  It's a bit unusual

3    since Ms. Kim won't be able to see what actually is being

4    redacted, but I'm hopeful that you can discuss general

5    categories of information and whether you agree they will be

6    appropriate for redaction.

7         And what I'm thinking, and I'm open to other

8    suggestions, but after you have that opportunity to meet and

9    confer, the defense can submit to me or file on the public

10   docket a redacted version of the affidavits and then unredacted

11   versions submitted to me *ex parte* and under seal.  My

12   individual rules have procedures for doing so.  And if there's

13   briefing in support of why certain redactions should be made,

14   that also should be handled in the same way.

15        If there are portions of the briefing that the defense

16   does not think should be filed publicly, the unredacted brief

17   could be submitted *ex parte* and under seal with a public

18   version filed in redacted form.  After I received all of that,

19   I will review everything and determine whether the proposed

20   redactions, whether it be for the financial affidavits or any

21   written submissions should remain redacted.

22        Mr. Habib, I know this is not your case, but how much

23   time do you think will be sufficient for this your colleague to

24   speak with Ms. Kim and then propose redactions?

25        MR. HABIB:  So I would obviously want to talk to

M2E6CRUC

1    Mr. Gombiner first.  I personally will not be here next week

2    because it's my children's school vacation.  So I think maybe

3    if we could have three weeks to do that.  Is that reasonable,

4    your Honor?

5            THE COURT:  I think given the size of the affidavit,

6    that might be reasonable.  I do think it would be productive

7    for your colleague and Ms. Kim to discuss what should be

8    redacted.  Is three weeks okay for the government?

9            MS. KIM:  Yes, your Honor.  And, actually, I will be

10   traveling for work, and so if we could possibly even have

11   four weeks, that would give us the opportunity to meet and

12   confer fully.

13           THE COURT:  Sure.

14           MS. KIM:  Just two quick questions.  Was the Court

15   anticipating that the government would also receive an

16   unredacted version of the application for the meet and confer

17   or no?

18           THE COURT:  I was not.  I did not have a mind that you

19   would receive an unredacted version of the entire affidavit

20   before the meet and confer, but more discuss the general

21   categories of information that would be appropriate.

22           Mr. Habib, do you think a conversation could be had in

23   which, without showing parts that you think should be redacted,

24   they can be described in a way that a discussion could occur?

25           MR. HABIB:  I think that's feasible, your Honor.

M2E6CRUC

1          MS. KIM:  And the ultimate unredacted version would be

2     filed with the Court and also sent to the government after the

3     redactions are made, or would it be filed *ex parte*?

4          THE COURT:  The unredacted version would be sent just

5     to me.

6          MS. KIM:  Okay.

7          THE COURT:  And then there probably will be a few

8     different ones after that.  One, what's publicly filed, which

9     may be the proposed redacted version; it may be the unredacted

10    version, depending on what is being sought to be redacted and

11    whether I agree with that.

12         And I suppose it's also a possibility that I could

13    decide that certain materials should be redacted, but the

14    unredacted version should go to the government.  That's a

15    possible scenario, but not having reviewed it, I can't say for

16    sure.

17         MS. KIM:  Okay.  And the second quick question was,

18    would the Court like for defense counsel to keep time records?

19    I know that was an issue that came up on December 2, and I just

20    wanted to reraise that now, now that new counsel has been

21    appointed.

22         THE COURT:  Mr. Habib?

23         MR. HABIB:  I would say it's not necessary only

24    because the Court, as I said, has made the determination of

25    eligibility.  In our view, that determination was

M2E6CRUC

1   well-supported by the affidavit.

2         I think in light of the materials disclosed in the

3   affidavit, it's extremely unlikely that Mr. Cruciani will be

4   retroactively found ineligible or found to have assets that

5   would permit him to pay Federal Defenders in part for any of

6   these services or to pay the Court in part for any of these

7   services.  And it would impose what will likely be a complex

8   case some burden on us in our office, and so I respectfully

9   suggest that's not necessary.

10       THE COURT:  So I guess what I am wondering is if one

11   of the properties is only in Mr. Cruciani's name, and I'm not

12   sure if that's the case --

13       MR. HABIB:  I think I know the answer exactly, but

14   it's escaping me at the moment whether that's public or not.

15       MS. KIM:  It is public.

16       So it was discussed at the December 2 conference.

17   There is one property, the Jersey City property, that is under

18   the defendant's name, and I believe as well as the wife's name,

19   and that is securing the bond in this case and also in the

20   Manhattan DA Office's case, and so it's possible that property

21   could become available.

22       THE COURT:  And that's what I wanted to ask you about,

23   Mr. Habib, if the bond did not require that property being

24   secured, he might not be eligible under the CJA.  So if there

25   is a conviction and the bail is therefore lifted, would there

M2E6CRUC

1    be a scenario where — maybe this is for Ms. Kim — there would

2    be a request that that property be liquidated and used to pay

3    for cost of representation?

4              MS. KIM:  I think that's possible, your Honor.

5              THE COURT:  Okay.

6              MR. HABIB:  Your Honor, obviously, we're several steps

7    away from that.  I think I would want to look at the extent to

8    which a family residence is subject to liquidation for that

9    purpose.  I don't know off the top of my head, but, for

10   example, there would be a homestead exemption and a bankruptcy,

11   I don't know whether a similar rule would apply.  I wanted to

12   look at that before that occurred, obviously.

13             THE COURT:  Right now, I'm not going to direct Federal

14   Defenders to keep time records.  If the government thinks

15   there's a reason to do so, send me a submission and explain the

16   basis for it and any case law supporting it.  But for now, I'm

17   not going to require the maintenance of records.

18             MS. KIM:  Okay.

19             THE COURT:  Let me ask.  I entered a protective order

20   last week.  Is there an update on the production of discovery?

21             MS. KIM:  Yes.  So there is one subpoena return that's

22   fairly substantial, and we have an outside vendor who's

23   processing and has finished Bates stamping that return.  But

24   apart from that one return, the rest of discovery has been

25   produced and made available to the defense.

M2E6CRUC

1          THE COURT:  Mr. Habib, I know you're not in a position

2     to talk about discovery, but have you heard any issues on your

3     end?

4          MR. HABIB:  I haven't.  I just haven't discussed

5     discovery with Mr. Gombiner.  I apologize for that.

6          THE COURT:  Certainly.  It's understandable.

7          MR. HABIB:  What I would say is I believe Mr. Cruciani

8     was saying to me earlier that the state court trial is now

9     scheduled to go forward on March 21 for jury selection and

10    March 29th for the presentation of evidence.  So the Court can

11    take that into account when setting a next date in this matter.

12         THE COURT:  Yes.

13         MS. KIM:  Your Honor, I believe the next date has

14    already been set for April 19th.  Just given our understanding

15    of what we've seen with state court cases regularly being

16    adjourned because of the pandemic, we would ask that if there's

17    any adjournment of that date, we submit a request to the Court,

18    or the defense submit a request to the Court before that April

19    date.

20         THE COURT:  Okay.  Mr. Habib, if you ask Mr. Gombiner

21    to keep me and Ms. Kim apprised of whether that March trial

22    date goes forward for now, but we'll keep the April 19th

23    conference.  I believe it's April 19th at 9:30, but it would be

24    good to know what's going on with that case.

25         MR. HABIB:  Of course.

M2E6CRUC

1          THE COURT:  We went pretty long and covered a lot.  Is

2     there anything further we should address?

3          MS. KIM:  Not from the government, your Honor.  Thank

4     you.

5          THE COURT:  Mr. Habib?

6          MR. HABIB:  I have one question, which I think I'm

7     ethically required to advise Mr. Cruciani that he is entitled

8     to take an interlocutory appeal of the Court's ruling.  I think

9     *Suarez* is one case, for example, that discusses that such an

10     order is appealable pursuant to the collateral order doctrine.

11          If Mr. Cruciani decide he wants to pursue the appeal,

12     I guess I would ask what the Court's view would be on staying

13     unsealing pending disposition of the appeal, which appears was

14     the course followed in *Suarez* itself.

15          THE COURT:  So right now the timeline we have set for

16     you to report back to me in four weeks should give you time to

17     figure out if an appeal is going to be sought.  If there is,

18     then I would say make an application Thursday.  But I think we

19     can hold off on addressing that to see if an interlocutory

20     appeal is sought.

21          MR. HABIB:  I think it would most likely be a 14-day

22     notice of appeal, so you're right about that.

23          THE COURT:  Okay.  Anything further from the defense,

24     then?

25          MR. HABIB:  No, your Honor.

M2E6CRUC

1             THE COURT:  From the government?

2             MS. KIM:  No, your Honor.  Thank you.

3             THE COURT:  Thank you, all.  Have a good rest of the

4    day.  Take care.

5             (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25